So let us turn to the first case on our calendar, which is Janet Solnin v. Sun Life and Health. Thank you. Good morning. My name is Scott Reamer, attorney for Janet Solnin in this ERISA attorney fee dispute. Regardless of what this court does with our other arguments, the court should reverse the district court because it focused exclusively on one factor when setting the hourly rates here. And that was the historical factor? Correct. Not present rates? Correct. But it focused on the historical rates that are in the case law and totally disregarded the evidence that we submitted that 79 clients in the Eastern District pay our hourly rates every month. How did you know that the district court disregarded that? It didn't mention it at all in the decision, and as a result of that, that decision should be reversed because it's directly contrary to this court's decision in the Fabaco v. Clinton County case that came out in 2005, which was exactly the same situation where the court totally disregarded other evidence, only looked at what was in the historical record, and didn't describe it. And the court said, you're not giving us enough of a record on appeal to look at this case, and that's what happened. I'm not sure I saw in the record, so help me out, whether you advised the court how many of those clients were ERISA clients. They were all ERISA clients. They were all ERISA clients? Where did that get identified in the record? Well, that's primarily what we do. So we represent clients in disability cases, and the vast majority of them are ERISA clients. And they're paying $720 an hour rates per month as those expenses are being incurred? Absolutely. Do you disagree that, should we follow your advice and remand this to the district court to consider this other information, that the district court could reach the same decision it did in this case? Well, Your Honor, maybe the court will reach the same decision, but it should be instructed by this court that it needs to make a case-specific inquiry looking at all the factors. And one of the issues here is that in the Eastern District for about the last 10 years, courts have continuously applied the same rate over and over again, just relying on a previous decision without considering current rates. And so we could trace those rates back actually to 2002, where there was a decision saying that $450 is the highest rate available in the Eastern District. And actually a magistrate, Scanlon, in the Eastern District in a case in 2018, HVT versus Port Authority, did an analysis of that and said that $450 an hour in 2002, just by inflation alone, is the equivalent of $640 in 2018. And so, that basically the rates that are awarded in the Eastern District are not even keeping up with inflation, let alone what the market is actually charging. And so, we have very compelling evidence here that a lot of clients in the Eastern District are willing to pay our rates. And even though these are the same rates we charge to clients in the Southern District, a lot of clients in the Eastern District are willing to pay it. And so that's the market rate in the Eastern District also. Is what Judge Hurley did a decision we review how, for abuse of discretion or what? Well, I believe that it should be reviewed by abuse of discretion, but to the extent that the legal standards it is in play, then that's something that the court looks at de novo. Well, let me take you back to that because part of your argument for why the legal standard is wrong here is this claim that you have all these clients paying the rate. It's been a long time since I was on the Eastern District bench, but I don't recall many disability clients being able to pay in advance of securing some kind of judgment. You're saying that you have disability claimants who are paying $720 an hour before judgment? Before actually a lawsuit. Where in the record do you say that, and where is the evidence to support it? It's in my affidavit. Right, but there's no document supporting it, right? It's an assertion, so you've sworn to it. I understand that. Right. Your Honor, let me explain what our practice consists of. In the ERISA context, you have to exhaust administrative remedies before the insurance company, before you file suit. We represent a lot of clients at that stage of the process, and at that stage of the process, a lot of our clients pay us on an hourly basis. The same clients are the clients that will eventually hire us in a litigation, but we only will take a litigation on a contingency basis because of the amount of time involved. What's important here is that these individuals have hired our firm, have paid us those rates, they pay it on a monthly basis, just as they do in the Southern District. People who live in the Eastern District? All in the East, like 79, we looked at our client list, and we were able to identify 79 of our 250 hourly rate clients live in the Eastern District. Are you also appealing the 25% deduction, or are you not appealing? No, we're only appealing the hourly rate issue. This is the only issue that you appeal? Correct. All right, thank you. We'll hear from... When you speak of rebuttal, would you tell me where in your affidavit this is, and more important, what the documentary evidence to support it is? You can tell us that when you rebut. Okay, thank you, Your Honor. Thank you. Thank you. And you have reserved two minutes for rebuttal. Thank you. Good morning. May it please the Court. Joshua Bacharach. I represent the Sunlight Defendants in this case. I think Your Honor's hit on the point here. And what we have here is that you're supposed to look at the legal community, right? That's the forum rule. And counsel's referring to his rates, his rates, his rates. But that's not the legal community. So, yes, he does charge more, and maybe some, and I agree. It's not in the record exactly how many do pay hourly. That's not in the record. 70-some-odd. 79? Out of 250. But that's an interesting question, too, because under ERISA, you're not allowed to even claim fees in litigation for work performed during the administrative phase. You're only allowed to claim fees for work in litigation. So he's referring to fees that he can't even bring in this lawsuit. Right, but you're not suggesting it's irrelevant. It's not irrelevant to the extent that it shows what his fees are. Again, it's not the legal community. But when you look at the evidence that was presented, and this is why the district court, I think, dismissed it. But he never alluded to it. He never told us that he looked at that evidence. That's the legal claim that counsel is making. Well, and I wish it was made clearer in the briefing, because it really isn't. What he's talked about mostly in his briefing is that he's asking you to apply a unified rate, which is contrary to the law. But he raised this issue. It's well-preserved. He did. And now he comes to us and says the district court never considered the evidence that I put in on rates I charge in the Eastern District. If the district court had said, I consider this and reject it, he wouldn't have a cause of action. He wouldn't have an appeal. I think the district court did consider it. How do we know that? But in the context of the arguments that were made. The argument that was really put forth to the district court was this unified rate with the Southern and Eastern Districts. And the court, and what the evidence was, and it applies to all of this, Your Honor. It applies to the issue on the unified rate, which has to be rejected under precedent, but also to what he's asking now. He danced around the issue. His affidavit, or what he called it. Would you say he? Counsel. Counsel danced around this. What he did was he said, here's what I charge. And then he said, some of my clients pay. But how many of his clients pay? He doesn't tell us also, as Your Honor pointed out, is this coming out of their pocket directly. We don't know that. That information wasn't provided. It's being told to you now. And I don't question him, but we have to rely on the evidence that's before the court. The other problem we have are these are contingency cases, as counsel says. So forget about what happened before the lawsuit was brought. We need to look at, because that's not part of an ERISA fee claim. We need to look at what happened during the lawsuit. And there's no evidence on that. So we know that there's a contingency. That's applied towards the fees. But we don't know how the fees are calculated, even for Ms. Solnit. Because he failed to include in the record the fee agreement. And that's a really key piece of evidence. So what the district court here, and granted maybe a little more explanation would have been better, what the district court here did was it looked at the evidence before it and said, I've got nothing, really, because all he is saying is this is what I charged, the evidence from the other two attorneys from the Eastern District of New York. I am looking at paragraphs 50 and 51 of counsel's affidavit, which is A57. That's where he says he has 250 hourly rate clients, 79 of which are located in the Eastern District of New York. That's why I asked how many of them were ERISA clients, because I didn't see an allegation that they were ERISA clients. Then he says the hourly rates charged to all are $720 for Mr. Reimer and then down from there. All of our hourly rate clients regularly pay these rates on a monthly basis. Clients are billed monthly. That's all I saw in it. And you're saying that's inadequate to assume that even he is regularly paid $720 an hour by ERISA clients? For litigation, because he doesn't differentiate between litigation. And, again, I think that's an important factor here, because litigation is what we're looking at is what he should be paid for during the lawsuit. The administrative proceedings can't be claimed under the ERISA statute, right? They're only allowed to claim fees for fees of action. So if he's being paid for something unrelated, and I know it's what leads up to the lawsuit, it's still different because those fees aren't the fees that are claimed here. So what we really need to know is how many, during litigation, how many of his clients pay him by the hour. And the answer to that is we don't know. You raised that issue before the judge? Did we raise that issue? We've said that the evidence was insufficient. Did we raise that specific point? I don't recall, but we raised the issue. You persuaded the judge that it was insufficient. He might have told us that, but he did not. He did not allude to that at all. Well, then let's look at this then, Your Honor, because we have to look at he's complaining that the court used historical rates. So what I did was I went online and I looked at all of the rates in every case that the court is awarding. So if you're saying that this judge abused his discretion, then every district court judge in the Eastern District has as well, and that's not the case because that is the highest award. In 2018, when that amount was awarded, that was the highest rate in any type of case, fee-shifting case, that any court awarded. The district court said, I am giving you the highest rate possible. In the Eastern District? In the Eastern District. Explain to me, why does it not make sense to consider the Eastern and the Southern District as different communities? Why does it or why does it not? I mean, you know, I concede that a river divides the Southern and Eastern District, but why are they different communities? Well, frankly, that was addressed by this court in the Simmons case, where the court said a litigant cannot overcome the presumption of the forum rule through mere proximity of the districts. Well, there are a lot of reasons. You know, for example. What are the best two? The best two are that, obviously, there are financial factors, economic factors. There are, you know, to have an office in the Southern District in Manhattan is a lot more expensive than to be on Long Island or even in Brooklyn. So that's a huge factor, and that's why a lot of these rules took place. So what Well, that's changed over the last decade. Brooklyn is now one of the most affluent communities in the country. It is. So where do we take this to? Mr. Reamer has an office or doesn't have an office, but he practices in Connecticut. He practices in New Jersey. So what do we do now? Do we expand it to those states as well, the same rate in those states or districts? Now we have the other issue. What he's asked you to do is not have a unified rate. This is what is really interesting. He's saying, I want a unified rate, but I want the Southern District rate to be that unified rate. Give me the highest possible rate. So in the next case, he's going to say in Connecticut, and by the way, as we point in our brief, a District of Connecticut judge rejected this. He's going to say, let's just have a national rate. And because he's saying the legal community is at risk of lawyers, but there has to be a limit. And the forum rule, that's the precedent here, Your Honor, if I can just finish that thought. The precedent here is it's the district where the lawsuit is brought. That's from Polk, that's from Arbor Hill, and that's from Simmons. And there's an exception in the rare and unusual case. But if he's asking for it in every case, it can't be rare or unusual. Thank you. Thank you, Your Honor. Mr. Rima, you've reserved two minutes for rebuttal. Thank you. I just wanted to go back to, like, the quote was correct that what I was referring to was on page A57, where we talk about clients who are actually paying our fees. I don't know, as I sit here today, how many of them are ERISA, but the vast majority of them are going to be ERISA plaintiffs because that's the nature of our practice. But also in paragraph 49, we also describe that approximately 50 percent of the firm's time is spent representing clients on a straight hourly basis. So this is a significant portion of our practice. And I wanted to address also what counsel was saying. Judge, I would ask for more information. I'm very skeptical of this claim. I'm very skeptical of it. From the fact that these are people of modest means. No, Your Honor, that's not correct. Mrs. Solman is of modest means, but most of our clients are not of modest means. You're asking what would be an appropriate fee in this case. Now, you recovered $188,000 judgment, and you're looking, originally you asked for a half a million dollar in attorney's fee. Correct. And the question is, for the district court, is what would a reasonable person be prepared to pay for representation in this case? Now, you don't know the outcome at the start. I understand that. But presumably, you have to tell your clients that, you know, the chances are that you'll recover this. The chances are you'll recover that. And you're telling us that someone of modest means would pay $720 an hour and other rates in a case such as this, and that strikes me as very questionable. I mean, the district judge did award you far in excess of the judgment you recovered, which is permissible. You also recovered ongoing benefits from Ms. Solman, did you not? Yes, we did. We actually recovered every cent she was entitled to. And she's still getting paid. Well, not anymore, but she got until the end, until age 65, that's correct. Well, Your Honor, you see the nature of these cases. So ERISA provides for fee shifting so that somebody like Ms. Solman could hire somebody like us. I understand that. Nevertheless, all of these are factors that the judge considers. Now, you're only challenging him with respect to the hourly rate slide. Yes. But why don't you address counsel's argument that the question is not just your hourly rate, but the prevailing rate in the market? Well, Your Honor, we did submit other evidence of other attorneys that practice in the Eastern District and what they charge, and they charge rates similar to the rates that we charge. The judge cited a variety of cases. But the judge didn't quote those either. Excuse me, I didn't hear you. I'm sorry, the judge didn't reference those affidavits that we submitted either. But he did reference a number of cases from 2018 in which the rates were comparable to the one he awarded. And in that sense, I'm not sure how we identify an abuse of discretion. Your Honor, if I may just address that. The cases he cited, neither one of which was in a risk of disability case. He cited one case that was a 1983 case, and he also cited a case that was a delinquent contribution case, which is very different than what we do. But what was interesting, and we described this in our reply brief, was that the case that he cited from 2018 cited another prior case, and that cited a prior case, a prior case, and we do the whole list. All of those rates that he was citing were rates that were awarded in the Eastern District in 2008 during the last recession. And so there has been no progression of the rates in the Eastern District for the last 10 years. And so there's a systemic problem in the Eastern District right now where the courts are awarding within that range and are never going above that, not taking into any consideration about what people are actually charging and what people are actually paying. And that's what we are hoping that the Court will address because I have not brought a case in the Eastern District since the Solon case, and will not because I can't make money here. It's not going to be paying, and so who's going to lose out on that? People who need to hire a risk specialist. And so it's not just me. It's other attorneys who really are not going to bring cases in the Eastern District anymore because it's just not competitive. If that's your position, you nevertheless waive the challenge to the 25 percent reduction. Well, that's something in the Court's discretion. I didn't think that that was going to be a good issue on appeal, and so I focused on the hourly rate, which I thought there was a clear abuse of discretion because he didn't focus on the evidence that was presented. And I also thought that there's an issue here. The Simmons case is from 2010. The world has changed so much in the last 10 years, and I think this Court needs to reevaluate how it looks at these types of cases because the market system is very different now, and the Court hasn't addressed that since 10 years ago. Fair enough. That's a good place to stop. Thank you, Bill. Thank you. We'll reserve decision.